UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Gary L. Pansier and
    Joan R. Pansier,

Case No. 18-22297-beh

                Debtors.

Chapter 7

Patrick S. Layng,

                Plaintiff,

v.

Adversary No. 18-2222

Gary L. Pansier and
Joan R. Pansier,

                Defendants.

**DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR
A PROTECTIVE ORDER QUASHING PLAINTIFF'S SUBPOENAS**

       The debtor-defendants Gary and Joan Pansier moved for a protective order quashing subpoenas the United States Trustee issued on third parties BMO Harris Bank, N.A., MoneyGram, and the United States Postal Service. The U.S. Trustee objected to the motion. For the reasons that follow, the Court will deny the Pansiers' motion.

## BACKGROUND

       The U.S. Trustee issued a subpoena to BMO Harris Bank, requesting documentation concerning two identified bank accounts (ending in 0698 and 0590), as well as any *other* bank accounts to which Joan Pansier, Gary Pansier, FLY SLOW FO TRUST, or Casey's Shadow LLC may have access; specifically:

> Copies of any and all financial records, of any type, for all personal or business checking, savings, or other banking accounts . . . to include copies of signature cards, bank statements, canceled checks, interoffice notes, bank records, wire transfers or deposits,

withdrawal slips from checking or money market accounts, or loan applications regarding Joan Pansier, Gary Pansier, FLY SLOW FO TRUST, and/or Casey's Shadow LLC for the time period January 1, 2017, through the issue date of the subpoena.

*See* CM-ECF Doc. No. 22, at 10.

The bank has not objected to the subpoena.

At the same time, the U.S. Trustee issued subpoenas to MoneyGram and the United States Postal Service, requesting the production of "[a]ll records regarding money orders purchased by Joan Pansier (N6755 Loop Lake Rd., Crivitz WI 54114) and/or Gary Pansier (N6755 Loop Lake Rd., Crivitz WI 54114) from January 1, 2017 through 2/14/2019." *See Id.* at 11–12.

MoneyGram and the USPS have not objected to the subpoenas.

## THE PARTIES' ARGUMENTS

The Pansiers object to the subpoena issued to BMO Harris Bank because, they claim, it requests "a multitude of documents that are excessive, unreasonable, and irrelevant to the issue of whether or not the Defendant's tax debts are dischargeable." CM-ECF Doc. No. 22, at 5. The Pansiers further fault the U.S. Trustee for requesting documents that they themselves could have provided, and assert that the U.S. Trustee is "abusing the discovery process and acting in bad faith by requesting documents from their bank with the intent of damaging Defendants' business relationship with those parties." *Id.* at 5.

The Pansiers object to the other two subpoenas as "placing an unreasonable, overly broad and costly burden on MoneyGram and the United States Postal Service" and likewise claim that they could have provided the U.S. Trustee with the requested documents, adding: "The Plaintiff[']s failure to take advantage of this inexpensive, convenient method of discovery casts serious doubt that either company possesses information that is remotely relevant to the discharge of tax debts; debts covering the tax periods of 1995 through 2006." *Id.* at 6.

As a result, the Pansiers request that the Court issue a protective order quashing all three subpoenas, claiming that the subpoenas seek "documents for no apparent or relevant purpose in resolving this case," are "unduly burdensome," and request "documents that can be obtained from a source that is more convenient, less burdensome and less expensive[—]from the Defendant[]s themselves." *Id.* at 1, 8.

The U.S. Trustee asserts in response that the Pansiers lack standing to move to quash the third-party subpoenas. But even if they did, says the U.S. Trustee, there is no basis to quash the subpoenas or to issue a protective order because the requests are not unduly burdensome and seek relevant information.

**ANALYSIS**

**A.     Standing to Quash the Subpoenas**

Although the Pansiers style their motion as one for a "protective order" and cite to Federal Rule of Civil Procedure 26(c)(1) and Bankruptcy Rule 7026, their motion is more aptly described as a motion to quash, because the outcome they seek is an order quashing the U.S. Trustee's third-party subpoenas in their entirety, not preventing the discovery or disclosure of certain types of information that the subpoenas seek. Federal Rule of Civil Procedure 45(c), made applicable here by Bankruptcy Rule 9016, requires a court to quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(I–V). The party seeking to quash bears the burden of demonstrating that the subpoena falls within one of these categories.

The Pansiers seek to quash subpoenas served on non-parties BMO Harris Bank, MoneyGram, and USPS. As a general rule, a party to litigation can move to quash a subpoena issued to a third party only if "the subpoena

infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). Such legitimate interests include "the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013).

Courts disagree over whether a party whose banking or other financial records are subpoenaed have a privacy interest in those records sufficient to bestow standing to move to quash the subpoena under Rule 45.[1] In any event, the Pansiers do not claim a personal privacy right or privilege in the subpoenaed information in their motion to quash. Instead, they contend that the U.S. Trustee is attempting to damage their "business relationship" with BMO Harris Bank by subpoenaing their banking records. The Pansiers fail to describe exactly how their banking relationship will be damaged; regardless, this particular type of "business relationship" is not one that courts have found to create a "legitimate interest" to confer standing to quash a non-party subpoena. *See, e.g., Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 n.2 (S.D. Ind. 2016) (relationship with movant's shareholder's);

---

[1] *Compare, e.g., Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (defendants lacked standing under Rule 45 to challenge subpoenas for financial records because they had no expectation of privacy in their business transactions with other corporations); *Clayton Brokerage Co. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) (bank records of a customer's transactions are not the customers' private documents, but business records of the bank, and therefore a bank customer has no "legitimate expectation of privacy" in the contents of checks, deposit slips and other banking documents); *United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007) ("Typically, a party has no standing to challenge a subpoena issued to his or her bank seeking discovery of financial records because bank records are the business records of the bank, in which the party has no personal right."); *with In re Capuccio*, 558 B.R. 930, 933–34 (Bankr. W.D. Okla. 2016) (defendant whose banking records were subpoenaed had a privacy interest in her personal financial affairs sufficient to challenge the non-party subpoena, although "[t]he fact that Defendant's right of privacy gives her standing to challenge the subpoena doesn't mean there are sufficient grounds to successfully do so"); *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229 (E.D. Pa. 2014) (judgment debtor had standing to challenge subpoenas issued to non-party banks, where the subpoenas requested the judgment debtor's personal financial information); *Bell v. Lantz*, No. 1:13-CV-0035-TWP-DKL, 2015 WL 6609290, at *2 (S.D. Ind. Oct. 30, 2015) ("A party has standing to challenge third-party subpoenas seeking the party's financial records.").

*Farmer v. Senior Home Companions of Indiana, Inc.*, No. 1:08-CV-0379-DFH-JMS, 2009 WL 564193, at *1 (S.D. Ind. Mar. 5, 2009) (relationship with a movant's customers/clients or employer).

The Pansiers also argue that the subpoenas seek irrelevant information and impose an undue expense or burden *on the subpoenaed non-parties*. Many courts have held that a party to litigation lacks standing to challenge a subpoena on these grounds: "Relevance, burden or service objections fall to the subpoena's recipient to make." *Parker*, 291 F.R.D. at 187.[2]

But the Court need not decide whether the Pansiers have standing to quash the third-party subpoenas under Rule 45, because "[d]istrict courts have found that a party who lacks standing under Rule 45 to challenge a subpoena may 'achieve a similar end under Rule 26' by requesting a protective order relating to document requests served on a third party." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 16-CV-4161, 2017 WL 5478297, at *3 (N.D. Ill. Nov. 15, 2017) (citing cases). The Court therefore will consider the Pansiers' request for a protective order under Rule 26.[3]

---

[2] *See also, e.g., Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) ("[A] number of courts have held that generally, . . . a party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.") (citing cases); *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 16-CV-4161, 2017 WL 5478297, at *3 (N.D. Ill. Nov. 15, 2017) ("As a non-recipient of the subpoena, Plaintiff has no interest in any undue burden that compliance would require, and Plaintiff thus has no standing to object on that basis."); *Auto Owners Ins. Co.*, 231 F.R.D. at 429 ("Defendants do not have standing to quash the subpoenas on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds."); *but see Ossola v. Am. Express Co.*, 149 F. Supp. 3d 934, 937 (N.D. Ill. 2015) ("Other cases have concluded that Rule 45 adopts the standards codified in Rule 26, and that a non-party subpoena may be quashed or modified by a party for the same reasons that would support a protective order under Rule 26.") (citing cases from other districts).

[3] The Pansiers' motion does not reflect compliance with Rule 26's meet-and-confer requirement that a motion for a protective order "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Nevertheless, because the debtors are proceeding *pro se*, and to move this case forward and reach the merits of the motion, the Court will not deny the motion on that basis.

**B. Good Cause to Issue a Protective Order**

The scope of federal discovery is broad. Rule 26 allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is appropriate, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* For purposes of discovery, relevancy is construed broadly to encompass "'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

A court may limit discovery where the information sought can be obtained from some other source that is more convenient, less burdensome, or less expensive, or outside the scope as permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). Once relevance has been shown, a party seeking to limit discovery bears the burden of showing why a particular discovery request is improper. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006).

Additionally, a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P 26(c)(1). The party seeking the issuance of a protective order bears the burden of demonstrating good cause. That burden "must be satisfied with 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.' General injuries are insufficient." *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 522 (E.D. Wis. 1999), *aff'd*, 280 F.3d 749 (7th Cir. 2002) (internal citations omitted). The movant must show that the requested discovery will cause "a clearly defined and serious injury." *Id.*

The Pansiers' conclusory allegations and insinuations that the U.S. Trustee intends to harm their relationship with their bank are insufficient to establish good cause. *Compare Doe v. Cty. of Milwaukee*, No. 14-C-200, 2015 WL 6442322, at *1 (E.D. Wis. Oct. 23, 2015) ("The County Defendants' conclusory assertions of annoyance and oppression do not satisfy their burden of showing good cause for the issuance of a protective order."). Additionally, assuming the Pansiers have standing to raise a relevancy objection, the Court finds no merit to that challenge. As an initial matter, the Pansiers confuse the subject matter of this adversary; it is not to determine the dischargeability of their tax debts, but to determine whether there is a basis to deny their discharges. The United States Trustee has alleged that the Pansiers use a BMO Harris Bank account to withdraw cash, which they then use to pay their personal expenses, including to purchase money orders that were not disclosed on their petition. The requested records are relevant to the U.S. Trustee's claims in this case, including his claim under 11 U.S.C. section 727(a)(4)(A).

Finally, although the Pansiers assert that the U.S. Trustee should be required to seek the records from them first, whether the documents can be obtained elsewhere is not an argument for the Pansiers to make. *See In re Rule 45 Subpoena Issued To JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. 2016) (attorney lacked standing to object to subpoena served on bank, which sought bank records for attorney and his law firm, on grounds that requester could have obtained the records elsewhere or in a more timely fashion). Moreover, the documents the U.S. Trustee has requested are not the Pansiers' private documents, but the business records of the bank and other entities, *cf. Clayton*, 87 F.R.D. at 571. The U.S. Trustee is entitled to request those records directly from the third parties; as neutral record-holders, BMO Harris Bank, MoneyGram, and USPS are more reliable and complete sources of the proposed discovery. The Pansiers have not asserted that they possess the exact same set of documentation that the U.S. Trustee would receive from the bank and other parties, and the U.S. Trustee should not be required to rely upon the defendants for this type of information, particularly when the

complaint alleges several causes of action based in fraud. *See, e.g.*, *Am. Seeds, LLC v. Watson*, No. CIV. 10-1012, 2010 WL 3843002, at *1 (D.S.D. Sept. 27, 2010) (rejecting as "frivolous" a suggestion that the plaintiff should have obtained the requested bank records from the defendant himself, noting "[b]ank records are normally obtained from the bank, especially in a case where the defendant is accused of significant fraud"); *see also CatchPlay Inc. v. Studio Sols. Grp., Inc.*, No. CV 12-7525 GW(JC), 2013 WL 12146123, at *3 (C.D. Cal. Mar. 28, 2013) (overruling defendants' objection that the plaintiffs' third-party subpoenas to banks were harassing and imposed an undue burden because the plaintiffs failed to seek the requested information from the defendants themselves; "[c]ontrary to defendants' suggestion . . . there was . . . no requirement that plaintiffs seek the records in issue from defendants . . . before seeking the records from the banks").

In this case, the subpoenas the U.S. Trustee issued to BMO Harris Bank, MoneyGram, and USPS seek relevant information and are narrowly tailored and limited in scope. In other words, the requested discovery is "proportional to the needs of the case" and the likely benefit of the proposed discovery outweighs any burden or expense. The Pansiers have failed to prove that the U.S. Trustee's third-party discovery requests are improper or should be prohibited.

## CONCLUSION AND ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the defendants' motion for a protective order quashing the plaintiff's subpoenas is DENIED.

Dated: March 22, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge